20-MJ-2105

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND WARRANT

I, Kyle Raguz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.   I submit this affidavit seeking the issuance of an arrest warrant and a criminal complaint charging Jamal EBERHARDT with being a felon in possession of ammunition, that is, twenty (20) rounds of 7.62 caliber ammunition manufactured by Tulammo, on or about December 8, 2018, in violation of 18 U.S.C. § 922(g).

## AGENT BACKGROUND AND EXPERIENCE

2.   I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since November 2015. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a graduate of the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I am currently assigned to a specialized enforcement group, the ATF Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms and narcotics violations. I have Privately conducted, and assisted in, multiple narcotics and firearms investigations. As part of these investigations, I have handled Confidential Informants (CI's), observed and handled various narcotics, and have authored and executed multiple search and arrest warrants. I have worked on multiple firearms related cases, including cases involving Privately Made Firearms. I have also been recognized as an Interstate Nexus Expert in federal courts in the Eastern District of Pennsylvania, and I have extensive experience identifying different firearms and ammunition.

3. The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other special agents and/or other law enforcement agents, as well as official reports of law enforcement. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant for Jamal EBERHARDT, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the arrest of Jamal EBERHARDT for being a felon in possession of ammunition on or about December 8, 2020, in violation of 18 U.S.C. Section 922(g).

**PROBABLE CAUSE**

4. In June of 2019, ATF Philadelphia Group VI investigators initiated an investigation into multiple competing Drug Trafficking Organizations (DTOs) operating within the Philadelphia Police Department (PPD)'s 15th District in the Eastern District of Pennsylvania. Around that time, a significant uptick in violence erupted between multiple groups within the 15th District. Specifically, investigators focused on the area of the 1700 block of Brill Street. The investigation has continued from that time until present.

5. As part of the investigation, investigators have conducted several controlled and monitored purchases of contraband, including cocaine, "crack" cocaine, marijuana, and illicit firearms, utilizing several registered ATF Confidential Sources (CS's).

6. In November of 2020, investigators utilized a confidential source, hereinafter referred to as CS-2, to conduct controlled purchases from a DTO operating on and around the 1700 block of Brill Street in Philadelphia. CS-2 has been a paid ATF informant for over twelve years. Information provided by CS-2 has proven to be reliable, and has been corroborated by other investigative techniques and law enforcement sources. CS-2 has been utilized in many ATF cases,

specifically regarding narcotics and firearms purchases. CS-2's information, as well as CS-2's assistance in purchasing narcotics and firearms, has led to dozens of arrests for federal firearms and narcotics violations in multiple judicial districts. In this investigation and other investigations, investigators have verified CS-2's information through queries of law enforcement databases, surveillance, and interviews. In this investigation, CS-2 has provided photographs, text messages, and consented to electronic surveillance (ES) of communications with suspects. These recordings and text messages have been recorded as evidence.

7. On or about November 17, 2020, ATF Group VI investigators conducted a controlled purchase utilizing CS-2 to purchase four Privately Made Firearms (PMFs)[1] from a suspect of the investigation, Michael CLARK, a/k/a "Tank." Based on the facts described below, I believe CLARK utilized a co-conspirator, unknown to investigators at the time but later identified as Jamal EBERHARDT, to make the firearms that CLARK would sell to CS-2.[2]

8. Prior to November 17, 2020, ATF Group VI investigators conducted multiple controlled purchases of narcotics from CLARK, his associate Amanda DERVIN, and another individual known as "Reuben" using CS-2 on or about November 10, 2020, November 13, 2020

---

[1] A "Privately made firearm," for the purposes of this affidavit, is used synonymously with the colloquial term "ghost gun." PMFs are made utilizing firearms parts commonly referred to as "80% lowers" or "80% lower receivers," meaning firearms receivers which are purchased by individuals in a partially complete state. Since the receiver is not complete upon purchase, and requires mechanical modification by the buyer to complete the "build" of a firearm, these parts frequently bear no serial of any kind. This makes these parts difficult if not impossible to trace, or investigate the origin of, on a recovered firearm. These types of firearms are often colloquially referred to as "80%'ers" or "ghost guns," the latter being a nod to their intrinsically anonymous nature. Based on our training and experience, ATF Group VI investigators know these firearms to be of high value to criminals engaged in violence due to this anonymous nature, their ability to be purchased, built, and sold without the same regulations affecting other firearms, and their apparent customizable characteristics. Based on my training and experience, I know PMFs have become a weapon of choice for many criminals, are often manufactured by or supplied to criminal groups and DTOs, and have been used in shootings throughout the region. Also based on my training and experience, I know it is a violation of federal law to make a firearm in violation of the National Firearms Act, such as a short-barrel rifle, and to possess one such firearm without registering it with the ATF and paying the appropriate federal tax. Also based on my training and experience, I know it is a violation of federal law to engage in the business of manufacturing and dealing firearms without a Federal Firearms License (FFL).

[2] The depth of the relationship between CLARK and EBERHARDT is discussed further herein, but continues to be under investigation.

and November 17, 2020. Investigators believe that CLARK and DERVIN were working together to deal in illegal narcotics along with other known and unknown individuals. During the controlled purchase of narcotics on November 13, 2020, CLARK advised CS-2 that he [CLARK] could obtain firearms for CS-2 to purchase.[3] Investigators also attempted to execute a controlled purchase of narcotics from CLARK on or about December 1, 2020, but were unable to do so for reasons detailed herein.

9.  After learning from CLARK that he had firearms for sale, investigators directed CS-2 to inquire about the purchase of firearms from CLARK. CS-2 asked CLARK whether CLARK would sell CS-2 firearms. CLARK indicated he could, and sent CS-2 a text message containing a photo that depicted four firearms. Investigators then directed CS-2 to purchase these firearms as described in greater detail below.

10. On or about November 17, 2020, at approximately 12:19 p.m., CS-2 called CLARK to discuss the purchase of firearms. During this call, which was monitored and recorded, CS-2 discussed with CLARK the text message CLARK previously sent CS-2 showing four firearms for sale.[4] During the subsequent conversation about those four firearms, CLARK assured CS-2 that the owner of the firearms "keep getting' em" because "he make them jawns."[5] At that time, CS-2 agreed to purchase two of the four pictured firearms from CLARK and CLARK's co-conspirator who was in possession of the firearms (later identified as EBERHARDT).

---

[3] The controlled purchase on November 10, 2020 was for approximately 3 grams of suspected marijuana, 5 alleged Oxycodone or similar opiate derivative painkillers, and approximately 5 grams of alleged "crack" cocaine. The controlled purchase on November 13, 2020 was for approximately 20 grams of alleged "crack" cocaine.

[4] As part of the lead-up to the purchase of contraband, CS-2 received photographs of the firearms from CLARK via Multimedia Message Service (MMS) and/or Short Message Service (SMS). The CI received a photograph of what appeared at the time to be four firearms: three semi-automatic pistols and one suspected short-barreled rifle.

[5] Based on my experience living and working in and around Philadelphia, I know "jawn" is a common Philadelphia-area colloquialism term usually used in place of a specific noun. For example, instead of CLARK saying "firearm," "gun," or "thing," CLARK used "jawn" to take the place of the known object. While it is common in non-criminal conversations, "jawn" is such an expansive and inclusive colloquialism in the region but is often also used by criminals to code their language and avoid detection by law enforcement.

11.  CS-2 also indicated during the conversation his/her timing of making the purchase was uncertain due to other time conflicts. CLARK assured CS-2 that he [CLARK] was "good, bro," further stating that "he [CLARK's co-conspirator, later identified by investigators as EBERHARDT] right around the corner [sic]."

12.  On or about November 17, 2020, at approximately 1:05 p.m., ATF Group VI investigators, SAs Kyle Raguz and Michael Plesniak, met with CS-2 at a predetermined meet location. The investigators searched CS-2 and CS-2's vehicle for contraband with negative results. The investigators provided CS-2 with $5,500.00 cash in government funds and equipped CS-2 with electronic surveillance equipment. SAs Raguz and Plesniak then directed CS-2 to proceed to the 4200 block of East Cheltenham Avenue in Philadelphia, Pennsylvania.

13.  While in the area of the 4200 block of Cheltenham Avenue, CS-2 successfully executed the controlled purchase of firearms from CLARK while under surveillance by investigators. During the purchase, CS-2 first purchased two firearms from CLARK, which were brought to the meet location by CLARK in a black bag for the sale. Investigators were concerned about CS-2 carrying too much cash on hand because of the potential that CLARK may want to rob CS-2, and investigators therefore instructed CS-2 to tell CLARK he could only purchase two of the firearms. If the first transaction was successful, CS-2 would then ask to purchase the additional two firearms.  CS-2 paid $2,800 in government funds for one rifle, one pistol, and ammunition. Once the first sale was complete, investigators directed CS-2 to attempt to purchase two additional firearms.

14.  CS-2 told CLARK that he [CS-2] had the money available and would purchase the two remaining firearms.  CS-2 remained in his/her vehicle and CLARK stated to CS-2 in conversation that CLARK would speak with "him" [CLARK's apparent co-conspirator], who

5

"made" the two additional firearms, in an effort to arrange the sale.

15. Approximately fifteen minutes later, a white Chevrolet cargo van or work van with ladders atop it and bearing Commonwealth of Pennsylvania registration ZLV-5514 arrived at the meet location. Investigators observed the van arrive, through binoculars, from a surveillance vantage point with a clear view southbound on Erdrick Street. At the time of its arrival, CS-2 was parked in his/her vehicle on Erdrick Street. The white van parked on the other side of Erdrick Street, facing southbound, from CS-2. Investigators observed CLARK approach the driver of the vehicle, EBERHARDT, and the two met at the rear of the vehicle. At that time, EBERHARDT transferred a large white envelope to CLARK.

16. Investigators observed CLARK return to CS-2's vehicle while carrying a USPS envelope CLARK had received from EBERHARDT. Inside of the envelope that CLARK received from EBERHARDT were two PMFs. CLARK gave the two PMF's to CS-2, who completed the sale of all four firearms, as well as accompanying ammunition and firearms magazines, for $5,000.00.[6]

17. While CLARK was in the vehicle with CS-2, having just received the second two firearms from EBERHARDT, CLARK stated to CS-2 "he's [EBERHARDT] gonna build an AR tonight." Based on my training and experience, I know CLARK was referring to EBERHARDT building an AR-type PMF.[7]

18. Following the sale of the second set of firearms delivered by CLARK, investigators observed CLARK return to EBERHARDT and transfer what appeared to be cash to EBERHARDT

---

[6] CS-2 returned $500.00 cash in government funds to ATF investigators. The USPS envelope was entered into evidence.

[7] This would be a second AR-type PMF from EBERHARDT. Investigators attempted to purchase this firearm and additional ammunition in the same manner as the November 17, 2020 purchase, but were unable to complete the purchase.

at the rear of EBERHARDT's white van. CLARK and EBERHARDT proceeded to speak behind the white van for several minutes. Investigators observed the two men with the assistance of binoculars. Investigators were able to clearly see EBERHARDT's face shape and body type as well as his clothing.

19. At that time, the monitored and controlled purchase was deemed complete by investigators and CS-2 was directed to depart the area and proceed to a predetermined meet location.

20. At the predetermined meet location, CS-2 turned over all the purchased contraband to SAs Raguz and Plesniak. The items obtained during the controlled purchase were itemized into evidence as follows:

 a. ATF Exhibit Items #8, #9, #10, and #11: Four PMFs, including one short-barrel, 5.56 caliber, semiautomatic AR-style rifle and three 9mm, semiautomatic pistols in the style of Glocks.

 b. ATF Exhibit Item #12: One USPS envelope used to transfer the second sale of PMFs, one thirty round extended magazine containing ten rounds of 9mm ammunition, and a fifty round box of 9mm ammunition.

 c. ATF Exhibit Item #13: One thirty round magazine for the PMF pistols.

 d. ATF Exhibit Item #14: Ten rounds of Aguila brand, 9mm ammunition for the PMF pistols.

 e. ATF Exhibit Item #15: One full boxy of fifty rounds of Aguila brand, 9mm ammunition for the PMF pistols.[8]

---

[8] Based on my training and experience, I know possession of ammunition as a convicted felon to be a violation of federal law. I believe ammunition purchased by CS-2 was either shipped or transported in interstate or foreign commerce. Based on my training and experience, I am aware that Aguila ammunition is manufactured outside of the Commonwealth of Pennsylvania.

21. The van's Commonwealth of Pennsylvania registration, ZLV-5514, was checked following the controlled purchase. The Pennsylvania Department of Motor Vehicles returned positive results for the van as registered to "McNally Construction, LLC" with an address of 110 Fortress Drive in Boyerstown, Pennsylvania.

22. ATF Group VI investigator SA David Krueger checked law enforcement databases for "McNally Construction, LLC" and determined that vehicles registered to this company were involved in two accidents in the past. The driver of those vehicles for both those vehicular accidents was listed as Jamal EBERHARDT.[9]

23. On or about November 18, 2020 at approximately 2:39 p.m., SA Krueger shared with investigators a photograph of EBERHARDT from EBERHARDT's Commonwealth of Pennsylvania Department of Motor Vehicles photograph. I observed that the photograph matched the man I observed the preceding day at the controlled and monitored purchase of PMF's utilizing CS-2.[10]

24. Also on or about November 18, 2020, at approximately 4:10 p.m., CS-2 was directed by investigators to call CLARK and attempt to purchase the additional firearm mentioned by CLARK (the "AR") during the controlled buy that took place on November 17, 2020. CS-2 was also directed to attempt to purchase ammunition from CLARK, as CLARK had mentioned during the buy on November 17, 2020 that CLARK could possibly get him ammunition for the firearms. During that conversation, CLARK stated to CS-2 again that "he," suspected by investigators to be EBERHARDT, "was gonna put another AR together." Investigators believed

---

[9] SA Krueger's review of law enforcement databases and open source information suggests "McNally Construction, LLC" is a real business and, to this point in the investigation, its association with the ongoing criminal investigation apparently exists only insofar as EBERHARDT may be employed by the company.

[10] Further corroboration of EBERHARDT's identity was obtained by identifying a Facebook profile page apparently belonging to EBERHARDT. On this Facebook page, EBERHARDT lists his first name as "Jay." I believe that "Jay EBERHARDT" is an alias used by EBERHARDT to receive items necessary to complete PMF builds at Location #1.

this to mean that EBERHARDT was continuing to build, and was in fact in the process of currently building, another PMF.

25. Law enforcement database checks, including the Commonwealth of Pennsylvania Department of Motor Vehicles, indicate EBERHARDT's current address of record as 5419 Saul Street in Philadelphia, Pennsylvania. Investigators have observed EBERHARDT coming and going from this residence on multiple occasions between late November through December 8, 2020. SA David Krueger also queried the vehicle's registration in PPD's license plate reader (LPR) system and set it to provide alerts. The system returned multiple positive hits in the area of the 5400 block of Saul Street in Philadelphia, Pennsylvania.

26. Additionally, on or about November 18, 2020, SA Plesniak contacted SA Matthew Lynch, United States Postal Inspector Service (USPIS). SA Lynch queried USPIS databases and determined a package from "JSD Supply," located at 1052 New Castle Road in Prospect, Pennsylvania, was en route to 5419 Saul Street. Investigators determined JSD Supply to be a business with a website ("https://jsdsupply.com") which sells "80% firearms," a vernacular term for necessary parts for completing a PMF.

27. SA Lynch also determined the package was addressed to "John SMITH." Based on the above-mentioned facts, investigators suspect "John SMITH" to be an alias used by EBERHARDT in an attempt to evade law enforcement detection. A check of City of Philadelphia records and law enforcement databases indicated to investigators no record of a "John SMITH" residing at 5419 Saul Street.[11] Based on my training and experience, I know it is common for

---

[11] The package from JSD Supply was delivered to 5419 Saul Street on or about November 23, 2020, according to information provided by SA Lynch. Investigators were unable to intercept the package and execute a search warrant on it due to time constraints and complications from the novel coronavirus infectious disease pandemic of 2019 (COVID-19). Investigators suspect this delivery was integral to the PMF that EBERHARDT was building, which was under construction at the time of a monitored and controlled call between CS-2 and CLARK which occurred on or about November 24, 2020.

criminals to use false identities to conduct their criminal activities in such a manner to mislead or evade law enforcement entities tasked to enforce laws against their criminal activities.

28. On or about a November 30, 2020, SA Lynch confirmed a package from "DELTAC.NET," an internet website (https://deltac.net) known to investigators to sell firearms parts, accessories, and gunsmithing tools. The company lists its address on the website as DELTAC, P.O. Box 331115, Fort Worth, TX, 76163. Further investigation indicated the website sells Glock-brand accessories and parts, AR-type "platform" parts, and other items are used to construct PMFs or customize existing firearms. SA Lynch confirmed a package was delivered to 5419 Saul Street from the company on or about November 9, 2020. That package was addressed to "Jay EBERHARDT."

29. On or about November 23, 2020, ATF Group VI investigators arrested Kelvin JIMENEZ, pursuant to a federal arrest warrant. JIMENEZ was known to investigators to be a high-ranking member of the DTO operating in and around the area.[12] Investigators have seen CLARK, DERVIN, JIMENEZ and known associates of the DTO together multiple times.

30. Investigators obtained a "Pen Register," commonly known as a "Trap and Trace" order, on CLARK's cellular phone number, 267-230-0491, pursuant to a court order signed by the Honorable Lynne A. Sitarski, United States Magistrate Judge for the Eastern District of Pennsylvania, on or about November 24, 2020.[13] This phone number was previously used by CS-2 to contact CLARK, including on the day of the controlled purchase of the four firearms.

31. On or about November 24, 2020, investigators directed CS-2 to make contact with

---

[12] On November 4, 2020, JIMENEZ was charged by a Federal Grand Jury in the Eastern District of Pennsylvania for one (1) count of distribution of cocaine base ("Crack"), in violation of 21 U.S.C. Section 841(a)(1), and six (6) counts of distribution of 28 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. Section 841(a)(1), (b)(1)(B). It is believed through the investigation that JIMENEZ is closely related to CLARK, DERVIN and other associates of the DTO.

[13] See Magistrate Number 20-MJ-1840.

CLARK in an attempt to purchase a fifth firearm and "crack" cocaine. Investigators monitored the pen register on CLARK's cellular phone number while CS-2 initiated contact. CLARK told CS-2 he would need to contact his connection, suspected by investigators to be EBERHARDT, to finalize the sale for the firearm. On that same day, CLARK, utilizing his own phone number, which was being monitored via the pen register, placed a phone call to 267-235-4585. According to the data from the pen register and open source data, the phone number is associated with EBERHARDT via his name, confirming investigators' suspicions.[14]

32. CLARK then placed a call to 267-235-4585 at approximately 1:00 p.m. Eastern Standard Time (EST). The owner of 267-235-4585, who investigators suspect is EBERHARDT, subsequently called CLARK twice at approximately 1:30 p.m. EDT.

33. CLARK then contacted CS-2 and stated the firearm was not completed yet but would be ready the following week. A purchase of the firearm was tentatively arranged for December 1, 2020.

34. On November 30, 2020, investigators directed CS-2 to again make contact with CLARK to complete the pre-arranged sale of the fifth PMF, from CLARK via EBERHARDT, as well as "crack" cocaine from DERVIN and CLARK, which was originally scheduled for December 1, 2020. CS-2 received text messages indicating, in summary, the sale of narcotics was off and that CLARK and other suspects were "out [of] the game" because their "main man [was] gone." Investigators know this to refer to the arrest of JIMENEZ on November 23, 2020. Based on my training and experience, I believe CLARK indicated that CLARK was declining to make the connection between the source of his supply of PMFs, suspected by investigators to be EBERHARDT, because the source of CLARK's and DERVIN's narcotics, JIMENEZ, was

---

[14] These databases provide known associations to a degree of certainty, but not 100% certainty. These databases all indicated that the phone number had a link to EBERHARDT.

recently arrested by ATF Group VI.

35. On December 4, 2020, the Honorable Elizabeth T. Hey authorized a federal search warrant for the residence of Jamal EBERHARDT at 5419 Saul Street in Philadelphia, Pennsylvania.

36. On December 8, 2020, ATF Task Force members established surveillance on 5419 Saul Street. At approximately 9:08 a.m., EBERHARDT was seen exiting his residence at 5419 Saul Street while carrying a black and red duffle bag. EBERHARDT entered his white Chevrolet work van and departed the area. EBREHARDT was taken into custody by Philadelphia Police Department at the direction of ATF based on EBERHARDT's involvement in the aforementioned firearms transactions facilitated by CLARK to CS-2. On the same date, EBERHARDT waived his Miranda rights by signing an ATF Advice of Rights waiver and briefly spoke with investigators at the ATF Philadelphia Office. EBERHARDT advised while speaking with investigators that he knew he was not to possess any firearms as we he was aware he was a convicted felon. EBERHARDT signed an ATF consent to search form to search his white Chevrolet work van and advised agents that the search would reveal a rifle that he claimed belonged to this sister but could not explain why he was bringing a rifle to his place of work in the work van that he was driving. During the search of the vehicle, investigators located in a red and black duffle bag, a PMF short barreled rifle with a barrel less than 16 inches, three (3) rifle magazines, and packaging for a firearm magazine.

37. On December 8th, 2020, ATF Group VI executed the above-mentioned search warrant authorized by Magistrate Judge Hey at 5419 Saul Street. Recovered from the residence, in the front room/vestibule area of the main floor, were twenty (20) rounds of 7.62 caliber ammunition manufactured by Tulammo. Investigators are aware that Tulammo manufactures

ammunition in Russia. While there, investigators spoke with Tamujin Eberhardt, EBERHARDT's sister. Ms. Eberhardt advised that EBERHARDT has been residing at the residence for approximately five (5) months and was staying in the living room area of the main floor and sleeping on the sofa in the living room. Ms. Eberhardt stated that a large collection of EBERHARDT's belongings, to include stacked boxes of sneakers and a package addressed to a possible alias of EBERHARDT's, were located towards the front room/vestibule area which is directly connected to the living room where EBERHARDT was sleeping. Ms. Eberhardt advised that the ammunition or any other firearm-related contraband did not belong to her. Also recovered from the residence were other firearms parts and evidence of firearm manufacturing, to include drills, drill bits and other tools. Ms. Eberhardt advised she was not aware that EBERHARDT had the tools in the house to manufacturer PMF's.

38. EBERHARDT is known to have a felony criminal conviction in the State of New Jersey.[15] This makes his possession of firearms and ammunition that have traveled in interstate and foreign commerce prohibited by federal law. EBERHARDT violated these on or about December 8, 2020 when he possessed the ammunition that was recovered from 5419 Saul Street.

39. Your Affiant, an Interstate Nexus Expert, has reviewed the ammunition recovered from EBERHARDT. It is the opinion of SA Raguz that if this ammunition were received and/or possessed in the State of Pennsylvania, they traveled in or affected interstate or foreign commerce, as defined by Title 18 U.S.C., Section 921(a)(2).

## **CONCLUSION**

---

[15] According to a check of the National Criminal Information Center (NCIC) database, EBERHARDT was arrested by North Wildwood, New Jersey, Police Department on or about May 30, 1998. EBERHARDT was convicted felony burglary charges on or about August 3, 2000 and sentenced to serve approximately four years in state prison. EBERHARDT was released after having served approximately two years and three months, on or about December 11, 2002.

51. Based upon the aforementioned facts stated herein, I have probable cause to believe that based on Jamal EBERHARDT's status as a convicted felon, prohibited from possessing firearms and ammunition, I have probable cause to believe that Jamal EBERHARDT has violated 18 U.S.C. § 922 (g)(1) (felon in possession of a firearm and/or ammunition) and the ammunition recovered during the search of 5419 Saul Street.

/s/ Kyle Raguz

Kyle Raguz, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Subscribed and Sworn before me this 9th day of December 2020.

/s/ Richard A. Lloret

HONORABLE RICHARD A. LLORET
UNITED STATES MAGISTRATE JUDGE